IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL S. OWL FEATHER-GORBEY, | Civil No. 3:20-cv-1364 |
| Petitioner | (Judge Mariani) |
| v. | |
| WARDEN, USP-LEWISBURG, | |
| Respondent | |

**MEMORANDUM**

Presently pending before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1), filed by Petitioner Michael S. Owl Feather-Gorbey ("Gorbey"), an inmate confined at the Federal Correctional Institution, Beckley, West Virginia. Gorbey contends that his due process rights were violated in the context of a disciplinary hearing held at the Federal Correctional Institution, Estill, South Carolina. (*Id.*). For the reasons set forth below, the Court will deny the petition.

**I.     Background**

In March 2020, Gorbey was charged in incident report number 3379061 with disruptive conduct most likely the use of drugs. (Doc. 1, p. 2; Doc. 11-1, p. 3). Gorbey alleges that he is innocent of the charge and that his due process rights were violated because he was not afforded 24 hours' notice of the Discipline Hearing Officer ("DHO") proceedings, he was denied a staff representative of his choice and instead received

ineffective assistance from an appointed staff representative, and he was denied witnesses and evidence for his defense. (*Id.* at pp. 6-8). For relief, Gorbey requests, *inter alia*, that the Court expunge the incident report and restore the loss of good conduct time. (*Id.* at p. 8).

## II.  Discussion

The reporting officer detailed the incident as follows:

> On March 16, 2020, at 11[:]20am, I Ofc. J Mastro was assigned to Carlie Alpha for duty. While conducting a routine security round[,] I/M Gorbey, Michael reg. 33405-013 was seen exiting his cell (224) screaming and causing a disruption. Inmate Gorbey began to act erratic and appeared to be under the influence of an unknown substance. I began to call inmate Gorbey by name in an effort to have him return to his cell. As I did so, Ofc. R. Williams entered to assist with the inmate. At that time, I observed inmate Gorbey had urinated and vomited on himself. When additional staff had arrived, inmate Gorbey was placed in hand restraints and escorted to SHU without further incident. Inmate Gorbey was asked to breathe into a breathalyzer to determine if he had been consuming alcohol and he complied. The test was conducted utilizing an Alco-Sensor III and the test was negative. Inmate was also directed to provide a Urine Specimen sample and he complied which tested negative. A review of his medical records was conducted by Nurse Ulmer. Nurse Ulmer stated that the inmate does have slurred speech and squinted eyes. Inmate does not have any medical condition that contributed to his condition. Inmate is not on any medication that will cause this type of reaction. It is my professional opinion this inmate is using illicit drugs.

(Doc. 11-1, p. 5 § 11, Incident Report).

On March 16, 2020, Gorbey was charged in incident report number 3379061 with disruptive conduct most likely use of drugs, a code 199/112 violation. (*Id.*). As part of the

investigation, Gorbey stated: "Two or three inmates ran in the cell and threw urine on me. They then held the door shut where I couldn't get out." (*Id.* at p. 4 § 24). The incident report was rewritten by the reporting officer on March 20, 2020 and delivered to Gorbey later that day. (*Id.* at p. 5). When the second incident report was delivered to Gorbey, the investigating lieutenant advised Gorbey of his right to remain silent, which he understood, and advised him that the incident report was a rewrite. (*Id.* at pp. 5, 6). Gorbey stated that he had nothing else to add to his previous statement. (*Id.*).

On March 23, 2020, Gorbey appeared before the Unit Discipline Committee ("UDC"). (*Id.* at p. 5 §§ 17-21). Due to the severity of the offense, the UDC referred the charge to the Discipline Hearing Officer. (*Id.* at p. 5 §§ 18-20).

On March 23, 2020, a staff member informed Gorbey of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (*Id.* at p. 8, Inmate Rights at Discipline Hearing). Gorbey was also provided with a "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (*Id.* at p. 7, Notice of Discipline Hearing before the DHO). Gorbey signed both forms, he requested representation by a staff member, and elected to call witnesses on his behalf. (*Id.*).

The DHO hearing commenced on April 29, 2020 and was concluded on May 5, 2020.[1] (*Id.* at p. 12, DHO Report). During the May 5, 2020 hearing, the DHO confirmed

---

[1] At the April 29, 2020 hearing, the DHO continued the hearing in order to contact a lieutenant regarding video footage of the incident. (Doc. 11-1, p. 12 § V).

that Gorbey received advanced written notice of the charges, that he had been advised of his rights before the DHO, and that Gorbey requested staff representation and requested to call three witnesses. (*Id.* at p. 10 §§ I-II). Gorbey indicated that he understood his rights, that he discussed his case in advance with his staff representative and had made no specific requests of his staff representative. (*Id.* at p. 10 § III). The staff representative confirmed that he discussed the case with Gorbey and that Gorbey made no specific requests of him. (*Id.* at p. 10 § II).

Gorbey presented two documents for the DHO's consideration. (*Id.* at p. 10 § III). The first document was a handwritten statement, titled "My Statement to DHO", was undated, and contained Gorbey's name and Bureau of Prisons ("BOP") register number. (*Id.*). The DHO summarized Gorbey's handwritten statement as follows:

> Gorbey states on 3-16-2020, he arrived in his assigned cell CA 224 at FCI Estill around 10:45 AM from work on the landscaping detail. Gorbey states his hypoglycemia was causing a drop in his (blood) sugar and making him lazy, we[a]k, and dizzy. Gorbey states he was "sitting in his chair, nodding, while waiting for lunch." Gorbey states inmates entered his cell, struck him several times, threw "stuff" on him and then exited his cell and barred the door to prevent him from exiting while they called for others to assist them in assaulting him. Gorbey states he hit his cell alarm and "muscled his way out of the cell, cussing at the ones responsible", while the reporting officer stood by and watched, failing to keep Gorbey safe. Gorbey states the reporting officer hit his alarm, and other staff arrived and took only Gorbey away and "processed him on a bogus intoxication charge even after breath and urine results were negative". Gorbey states he was examined by Nurse Ulmer who simply took his vitals, but "did not examine his injuries from the assault". Gorbey further alleges Nurse Ulmer never consulted his medical records or medication drug facts. Gorbey alleges he "complained to a list of staff,

4

several Lieutenant staff and administration requesting they review the camera to see the other inmates involved who caused this." Gorbey reiterates his allegation [that] he was assaulted by other inmates while the reporting officer "refused to keep him safe", and only acted after Gorbey "sounded his cell alarm and muscled his way out of the cell." Gorbey concludes, stating, "I am innocent of any violation of BOP policy and I want the charge obspunged [sic]."

(*Id.* at pp. 10-11 § III).

At the hearing, Gorbey also provided the DHO with a copy of a BOP Health Services Consultation Request Form prepared with regard to Gorbey on September 3, 2019. (*Id.* at p. 11 § III). Gorbey stated his prescribed medications, Ibuprofen and Latanoprost Ophthalmic Solution, could have caused the behavior noted in the incident report. (*Id.*). Gorbey alleged that Ibuprofen causes "uncontrolled or other vomiting," and the Latanoprost Ophthalmic Solution causes dizziness and slurred speech. (*Id.*). Gorbey also wrote on the form that he suffers from hypertension and hypoglycemia, both of which can cause dizziness and slurred speech. (*Id.*). In addition to the handwritten documents, Gorbey testified that the incident report was inaccurate, and stated:

> . . . this is a bogus charge. I wasn't using any type of drugs. My blood sugar was low, and that combined with my prescribed medications made me weak and dizzy and caused me to have slurred speech. I was covered with urine because two or three other inmates assaulted me by throwing urine on me. Then they held my cell door shut so I couldn't get out. The assault caused me to hyperventilate and act erratically. [A lieutenant] told me he watched the video footage and he verified I was assaulted. If you contact him, he can verify that he watched the video, and that I was assaulted.

(*Id.*). During the DHO hearing, Gorbey made no complaints of procedural errors. (*Id.*).

The DHO noted that when Gorbey appeared before the UDC, he requested the following three witnesses: a doctor, to testify that Gorbey "wasn't high"; a lieutenant, to testify that Gorbey "wasn't high" and that he saw Gorbey; and a staff member from the facilities department, to testify that he saw Gorbey in the holding cell. (*Id.* at p. 7). The DHO declined to call any of the witnesses requested by Gorbey. (*Id.* at p. 11 § III). With regard to the doctor, the DHO stated that there was no indication that he was an eyewitness to any part of the incident. (*Id.*). Instead, the doctor only co-signed the BOP Health Services Clinical Encounter Form pertaining to Gorbey. By co-signing the Form, the doctor "indicat[ed] his concurrence with the findings of Nurse Ulmer that Gorbey did not have any medical condition or take any medication that contributed to his condition, and with Nurse Ulmer's professional opinion that inmate Gorbey was using illicit drugs." (*Id.*). Therefore, the DHO deemed the doctor an adverse witness whose knowledge of the incident was adequately summarized in the record. (*Id.*).

With respect to the lieutenant, the DHO stated that he was not an eyewitness to the incident. (*Id.*). The lieutenant supposedly reviewed video footage of the incident and could corroborate Gorbey's claim that he was assaulted by other inmates. (*Id.*). The lieutenant was not available at the time of the original hearing but presented a statement the following day. (*Id.*). In the statement, the lieutenant suggested that the DHO speak with a Special Investigative Services ("SIS") technician who had reviewed the video footage and

determined that the inmates at the door "were just trying to help Gorbey because he was high." (*Id.*). The SIS technician presented a statement dated May 1, 2020, wherein he stated that "he reviewed the video footage related to inmate Gorbey, and concluded based on this footage that Gorbey was 'under the influence during the incident.'" (*Id.*). The DHO considered these statements and found that it was not necessary to call the lieutenant as a witness because it was evident that he was not an eyewitness to the incident. (*Id.*).

The DHO next determined that the facilities staff member had no information directly relevant to the incident. (*Id.*). The DHO noted that the staff member may have observed Gorbey in the holding cell after the incident, however he did not observe Gorbey *during* the incident. (*Id.*). The DHO therefore found that any information presented by the staff member would not be material to determining whether Gorbey engaged in the behavior documented in the incident report. (*Id.* at pp. 11-12 § III).

In reaching his decision, the DHO considered the eyewitness written account of the reporting officer as set forth in the incident report, the investigation, the BOP Health Services Clinical Encounter Form prepared on March 16, 2020, statements of the lieutenant and SIS technician, Gorbey's handwritten statement, and the BOP Health Services Consultation Request dated September 3, 2019. (*Id.* at pp. 15-16 § V). After consideration of the evidence, the DHO found that the greater weight of the evidence supported a finding that Gorbey committed the prohibited act of conduct which disrupts or interferes with the

security or orderly running of the institution most like the use of any drug not prescribed by medical staff, a code 199/112 violation. (*Id.* at p. 14 § V). The DHO found Gorbey's testimony less credible and gave it less weight. (*Id.*). The DHO noted that the bizarre and erratic behavior demonstrated by Gorbey at the time of the incident was witnessed and documented by two staff members, one of whom was a medical professional who determined that Gorbey did not have a medical condition or take any medication that could have contributed to his behavior. (*Id.*). Additionally, the DHO noted that Gorbey blatantly lied when making claims relating to the lieutenant's alleged review of video footage, which critically detracted from the credibility of his testimony. (*Id.*). Finally, the DHO noted that although Gorbey's Breathalyzer test and urine sample were negative, these results were not conclusive evidence that Gorbey was not under the influence of an illicit substance at the time of the incident. (*Id.*). The DHO found that it simply meant that Gorbey did not have alcohol on his breath, and the urine sample did not test positive for one of the illegal drugs or controlled substances that the BOP is capable of screening. (*Id.*). The DHO noted that BOP inmates are using new psychoactive substances, including synthetic cannabinoid, which may not be detectable in urine screens, and cause grave security, safety, and health concerns within correctional institutions. (*Id.*).

After determining that Gorbey committed the prohibited act as charged, the DHO sanctioned Gorbey with 41 days loss of good conduct time, 90 days of disciplinary

segregation, and loss of commissary, telephone, and visiting privileges for one year. (*Id.* at p. 15 § VI). At the conclusion of the hearing, the DHO provided a copy of the report to Gorbey and advised him of his appeal rights. (*Id.* at p. 15 § VIII).

Gorbey's sanctions included the loss of good conduct time; therefore, he has identified a liberty interest in this matter. Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. *Id.*

In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and, (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action.

*Wolff*, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled: *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an incident report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial hearing pursuant to § 541.7. The UDC "will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays." 28 C.F.R. § 541.7(c). This period may be extended if the incident is being investigated for possible criminal prosecution. 28 C.F.R. § 541.4(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. 28 C.F.R. § 541.7(f). If the alleged violation is serious and warrants

consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.7(a), (g). The inmate will receive written notice of the charge(s) against him at least twenty-four hours before the DHO's hearing, however the inmate may waive this requirement. 28 C.F.R. § 541.8(c). The inmate is entitled to have a staff representative, appear at the hearing, make a statement, present documentary evidence, and present witnesses. 28 C.F.R. §§ 541.8(d), (e), (f). Following the hearing, the inmate will receive a written copy of the DHO's decision. 28 C.F.R. § 541.8(h).

In the instant case, it is clear that Gorbey was afforded all of the required procedural rights set forth in *Wolff*. He received advanced written notice of the charge and incident report on March 23, 2020, seven days after the incident and more than one month before the DHO hearing. *See* 28 C.F.R. § 541.8(c) (providing that the warden is required to give the inmate advance written notice of the charges "at least 24 hours before the DHO's hearing").

Gorbey appeared before the UDC and was allowed to provide a statement on his own behalf. He was properly informed of his rights before the DHO hearing, as well as given the opportunity to make a statement, present documentary evidence, and have a staff representative. Pursuant to BOP Policy, "[i]lf [the inmate's] request(s) [for a staff representative] cannot be fulfilled, and [the inmate] still want[s] a staff representative, the

11

Warden will appoint one." (Doc. 11-1, at 43, Program Statement 5270.09). Here, Gorbey initially requested an FCI-Estill staff member as his staff representative. (Doc. 11-1, p. 7). However, before the DHO hearing was held at FCI-Estill, Gorbey was transferred to USP-Lewisburg because a tornado hit FCI-Estill. (Doc. 11-1, p. 1 ¶ 3). Therefore, the Warden at USP-Lewisburg appointed a new staff member to represent Gorbey. (Doc. 11-1, p. 7).

At the hearing, the DHO decided not to call Gorbey's three requested witnesses because they either did not have information directly relevant to the charges, did not witness the incident, or were adverse. Pursuant to 28 C.F.R. § 541.8(f)(3), the inmate's "requested witnesses may not appear if, in the DHO's discretion, they are not reasonably available, their presence at the hearing would jeopardize institution security, or they would present repetitive evidence." The DHO carefully outlined his reasons for not calling Gorbey's requested witnesses.

At the end of the hearing, Gorbey received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Gorbey was also notified of his right to appeal.

Since Gorbey was afforded all of his procedural rights, the only remaining issue is whether there was "some evidence" to support the decision by the DHO. The record clearly reveals the existence of evidence to allow the DHO to conclude that Gorbey was guilty of the charge. The DHO determined that the greater weight of the evidence supported the

finding that Gorbey violated code 199/112. In reaching his decision, the DHO considered the eyewitness written account of the reporting officer as set forth in the incident report, the investigation, the BOP Health Services Clinical Encounter Form prepared on March 16, 2020, statements of the lieutenant and SIS technician, Gorbey's handwritten statement, and the BOP Health Services Consultation Request dated September 3, 2019. Based upon this evidence as relied upon by the DHO, the Court finds that Gorbey's due process rights were not violated by the determination of the DHO.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq*. Gorbey was found guilty of a 100-level, greatest severity prohibited act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 100-level prohibited acts:

- A. Recommend parole date rescission or retardation.
- B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
- B.1. Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
- C. Disciplinary segregation (up to 12 months).
- D. Make monetary restitution.
- E. Monetary fine.
- F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
- G. Change housing (quarters).
- H. Remove from program and/or group activity.
- I. Loss of job.

  J. Impound inmate's personal property.
  K. Confiscate contraband.
  L. Restrict to quarters.
  M. Extra duty.

28 C.F.R. § 541.3 (Table 1).

Thus, the sanctions imposed by the DHO in this instance were consistent with the severity level of the prohibited act and within the maximum available to the DHO.

Further, "[t]he Eighth Amendment is violated only when a punishment is grossly disproportionate to the severity of the offense." *Levi v. Holt*, 192 F. App'x 158, 162 (3d Cir. 2006) (citing *Rummel v. Estelle*, 445 U.S. 263, 271-74 (1980)). Therefore, only sanctions that "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," may be deemed excessive. *Moles v. Holt*, 221 F. App'x 92, 95 (3d Cir. 2007) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The penalties imposed here, loss of good conduct time, disciplinary segregation, and loss of privileges, do not work an "atypical and significant hardship" on Gorbey and do not serve to extend his confinement beyond the expected parameters of his sentence. *Sandin*, 515 U.S. at 484-85. Consequently, he is not entitled to relief.

## III. Conclusion

Based on the foregoing, the Court will deny the petition for writ of habeas corpus. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: September 30, 2021